1038.22 Christian Assembly Rios De Agua Viva v. City of Burbank Good morning, your honors. My name is John Malk, law firm of Malk and Baker, and we represent Christian Assembly Rios De Agua Viva. Burbank May it please the court, John Murphy, M-U-R-P-H-E-Y, and Joseph Canecar representing the city. Are only one of you going to argue? Just myself, your honor. Very good, Mr. Murphy. You need to get a seat. Each side is 15 minutes. If you run over, that's fine. We don't look at our watches, but we have to keep it interesting, so don't repeat yourselves. I can assure you we've read the briefs, pulled the pertinent cases, and looked at the pertinent portions of the record, so there's no need to go into what your strongest point was. And any time you're ready, Mr. Malk. Thank you, your honor. I'd like to save five minutes for rebuttal, if that's appropriate. Your honors, to begin this argument, it would be most helpful to look at the zoning map for the city of Burbank that's found at appendix page 191. I looked at it, but one thing that bothered me is you have a whole area that's white. Is that Burbank or not Burbank? Yes, the area that's white is Burbank, and it's zoned residential. The white stands for residential zoning. There have been additions to us, which is the highlighted properties, where it says in the upper right-hand corner, we have highlighted three things in the code. Everything else is just the code itself. What we've highlighted is the property in question, which is in the center of the page with the alley showing in it. It's blue, and that's the property that the church is trying to buy. We've highlighted the Burbank Manor Presbyterian Church in red, which is just to the north, and immediately to the east, St. Albert the Great Catholic Church, which is the largest area, but the green and the blue and the red outlines are not part of the code. The white represents everything that's zoned residential. The blue, the pale blue, is the commercial zoning. There are a couple things that we can learn just by It's zoned commercial, but it's spot zoned. It's one user, one piece of property, zoned commercial, not adjacent or even close to any other commercial properties. It's surrounded entirely by residences. There is a township office next door. That's the only non-residential use, but it is a non-commercial use. And then, of course, there are the two churches, one very large church, which sets the character of the neighborhood as a residential zone. The relief we're asking is a declaratory judgment, an injunction to protect the civil and property rights of this Hispanic congregation to have a house of worship in the middle of this residential area and next to two other churches. The standard for an injunction is an R1 area. Up in the top left, you can see there's R1, single family residence district, as well as R, and then there's an R2. So there's, I don't quite understand the R and the R1, but there's R1, R2, and the upper left hand is the code that's in the code. In the upper right hand is notations that we've added. The standard for review here, Your Honors, is a de novo. There are no contested facts at this point in the litigation. We're seeking a facial interpretation of the zoning statute and of the rights of the church to buy this property and use this property. And which zoning statute are you arguing applies? The amended? No. Or the original? The original. The courts have said again and again that testing a vested rights, you look at the code at the time that a party makes steps in reliance on that particular code. I would agree with that. That certainly is the holdings on vested rights, but as the courts have pointed out three times in the last seven years, those with the zoning ordinance. So if you had complied with the zoning ordinance, if you had been put forth, had you been, had they not had a special use, had you been, had churches been permitted in this zone, and then they said, well, we don't want your church, it's a Hispanic church, or whatever they would say, you could then argue the vested rights. How can you, how do you have vested rights where you didn't fit in under the first ordinance, or the first ordinance said it was a special use, which they would not grant you? Yes, under the ordinance per se, we don't have a vested right. But under Illinois law, read in conjunction with the ordinance, we believe we have a vested right, because we believe at the time we applied that the equal protection clause, which said you can have business associations, labor associations, civic associations, social associations, fraternal associations, all permitted uses, that the equal protection clause required that religious associations be permitted. And there are a lot of cases on this equal protection argument, including River of Life, which is cited in the briefs, which say where you have associations and assemblies of a non-religious nature, equal protection requires that you allow associations of a religious nature. So we believe that the law allowed this. Not the code, but the law, the Constitution. Yes? I'd suggest that the doctrine of vested rights in Illinois comes from Skokie Townhouse v. Village of Morton Grove, a 1959 case, and it says, in half a sentence, such a party has a vested property right, and he may complete the construction and use the premises for the purposes originally authorized. So how was your client's use of this old restaurant originally authorized, when it was never authorized, when the zoning board refused to give a special use permit? Yeah, I don't think the Skokie case addressed facts like this, but originally authorized, we take to mean, or it should be extended to mean, authorized by the ordinance and or Illinois law and or Illinois Constitution, because those are higher laws and they need to be read in conjunction with the city ordinance, and if the city ordinance is contrary to Illinois law or the Constitution, the higher law trumps. How is this different than Civil Liberties v. City of Chicago or Elgin v. All Nations or the Petra case, Petra-Presbyterian v. Northport? Yeah, let me start with Petra. All three of those were our cases, Your Honor. Yes, they are. And so I know them well. All Nations is closest on point, and we believe that that was wrongly decided and this Court should not follow it. Unfortunately, they did not allow oral argument in that case, and they would have avoided, hopefully, two mistakes that were made. First of all, there's a doctrine called void ab initio, which means an unconstitutional statute has no effect. There's another line of cases that say if a court hasn't made a decision concerning an ordinance, people can't be prosecuted or held accountable for following an ordinance. This is where policemen might follow an ordinance allowing an arrest and later the ordinance or law is found to be unconstitutional, that police officer is protected because they're relying on a law that was presumed valid. But there's another line of cases, STAUB, which is cited in our briefs, Supreme Court, and it's in many circumstances where laws are unconstitutional, people do not have to follow them. If they choose to ignore them, they do so at their risk. That's right, at your risk. So in this case, under that theory, then, weren't you, or your client, not you, proceeding at their risk to argue in front of a court that you had a probability of getting zoning or being allowed to have a zoning amendment to allow this church to buy the old barn restaurant? How do you, of course you can argue anything, we're lawyers, but how do you have a probability of that when the ordinance says you don't? We have two probabilities. First of all, there are numerous cases in the River of Life case, which 7th Circuit en banc, it's a very recent case, 2010, addresses this very issue of churches in commercial zones and says where you have a commercial zone that allows assembly uses, you must allow religious assembly uses. So one, you're relying on that case, many other cases that we've cited, federal statutes, state ordinances, state RFRA, and the second probability, your honor, is that we have a probability of obtaining a special use permit because churches are not barred under the code, there are special uses. I'm sorry, there are special uses under this ordinance? Yes. I didn't see it as a special use. Church. I see it in R3 and R4, is it? Yeah. It's a permitted use in R3 and R4. R2 and R3, yes. But under the code, at the time the church contracted to purchase, it was a special use. It was specially permitted. Specially permitted means that you have to go through a hearing process before the city and they can grant you a permit. Illinois law is explicit, and this is living word outreach, which is another case that we had with the Illinois Supreme Court, said a special use is presumed compatible with the surrounding properties. And so the church had two probabilities of success, we believe. One is the fact that other assemblies were allowed. The second is that it was a special use by ordinance, and special uses are presumed compatible. So there was a presumption that the church would be allowed. So under either of those two legal theories, we feel that there was a probability of issuance of a building permit. Did any of these other cases have a wording in the contract, like it's in this contract, saying if you don't get zoning, you can walk away from this deal? Since you weren't involved with all of them? No. Okay. I don't recollect any. And your first 30-day period is up on the 27th, is that right? No. We've already put up additional earnest money to hold the contract. So we had initial earnest money and then since that... But the initial earnest money was for the first 30 days, should expire February 27th. You may have kicked in a second $15,000 for an additional 30 days after the 27th of February, is that right? Yes. Okay. Yeah. But going back to, first I find in Rivers of Life, the Seventh Circuit en banc also affirmed that the church couldn't go there in Hazelcrest, right? That Hazelcrest was correct, or at least they didn't violate anybody's rights by not allowing the church to take over the property in Hazelcrest, right? Yeah. The church did not argue in that case a vested rights argument. And vested rights, the federal courts have said are to be determined by state court. And you asked about the Petra case and I didn't mean to ignore that. The Petra case has a very clear statement that we're not going to determine as a federal court the state doctrine of vested rights. And that's one reason that we're here. You could. I had a Petra reading about what state law writes under federal law. Anyway, the judge did Petra a favor by relinquishing jurisdiction over the state law claim because if it were before us, we would reject it on the merits as a misreading of Illinois law. As near as we can understand it, Petra is claiming that when it bought the property, it was reasonably relying on the invalidity of the 1988 ordinance, which arbitrarily treated religious membership organizations worse than membership organizations, thus violating not only our LUIP but the First Amendment. That's your argument here, is it not? That's what? That's your argument here, is it not? Yes. Right. So they understood your argument in the Seventh Circuit in Petra. And it's the same argument here. And so under what theory then do you prevail where that's your argument? Can you cite a case where this has occurred, where you've prevailed? In a court of review, where a court of review has looked at it, Mr. Malkin said, you know, you're right. Here's an invalid ordinance, or a violative ordinance. And then a church tried to get in and argued that's a violative ordinance. You're right. We're going to spend money on this now. And then a court of review said, that's okay. You get the vested rights doctrine applies. Can you cite a court of review that has said it? Applied the vested rights doctrine under those circumstances? No. The Judge Posner in the Petra case we don't think should be followed. He's a brilliant judge, but sometimes he opines on things he's not ruling on. He certainly does. And that issue wasn't before him. And he went to the Healey case, the Illinois Supreme Court case, which we think is a very important case. And he brought that case in and did not have that briefed, and there was no argument on it. The Healey case says that a party's entitled to rely on the existing code at least until there's an amendment offered. Allowed to rely on the law, and I would say law, not just code, the law until there's an amendment offered. So Judge Posner said he did us a favor by not ruling on it, but he really shouldn't have ruled on something that wasn't before him and an argument that wasn't made. And we think he was wrong. If he looked at the Healey case, he would see that it stood for what I'm just saying. Instead, he kicked it over to the Illinois courts and said the argument concerning vested rights is an Illinois law decision. And that's the ruling. That's why Petra does not apply to this situation, even though there is a victim that's worth considering. In civil liberties, which arises in a lot of these cases, civil liberties 2003, 7th Circuit case, they talk about a party not giving a right to the wrong ordinance, meaning it's a violative ordinance. And in that case, they amended the ordinance, which was violative, at least arguably violative, in 2000, very similarly, I suggest, as to Burbank did here. And there the 7th Circuit held that the claims under the prior ordinance, the pre-amended ordinance, were moot because the ordinance had been changed. Why should we not apply that home? None of the churches had properties under contract at that point. The properties that they had contracted to buy were long gone. It was three or four years after they had. And that's why we appreciate this court taking the case at this point. Because when somebody's buying a property, particularly a minority church, they're very vulnerable. It's like a woman in labor being attacked. There's nothing you can do except scream out to the courts, help me, they're changing the law and it's in the middle. We've got a contract, we've got an option, we've been looking for years, the property's been vacant. We hear the same things from the municipalities when the courts of review get involved in zoning as well. Who are we? Notably our Supreme Court. And I think their arguments are based on the idea that perhaps courts of review don't understand zoning. And I can't say that they're wrong. Meaning the lawyers who complain of that are not wrong. So going back, let's assume it's not moot. It would still hold that we would apply the new ordinance. Because there are a lot of change ordinances, are there not? We have a bad ordinance, you point out there's a bad ordinance. We'll change it for you. You're barred. Everybody's barred. We're going to throw out the Eagles, the Boy Scouts, they're all getting thrown out. Why shouldn't we do that? You can apply the new ordinance, but for vested rights, you apply the ordinance at the time that the party acts in reliance on then existing law. We quote on page 7 of our reply brief, the Illinois Supreme Court. If I may read, this is Coscorp v. Evanston, excuse me, page 6 of our reply brief. Where an individual or corporation expends substantial sums relying on the then existing zoning and zoning ordinances and proceeds to seek a permit in compliance with them, it would be a grave injustice to allow municipal officials to hold up action on issuance of a building permit until an amendment or ordinance could be passed, changing the standards to be met, so that a permit formally lawful would now not be issued due to an abrupt change in the law. So we believe it's definitive that you apply the ordinance at the time. Again, at the time, I know you said it already, I want to make sure I got it good. At the time you're saying that you acquired $15,000 worth of interest, you say the church was permitted? The church was permitted by Illinois law. Not the ordinance that only said churches are specially permitted, but it is our contention that because the ordinance allowed political and civic and business associations, as a matter of law, it was permitted by Illinois law. But the ordinance specifically allows in certain districts. Yes. But if we agree with you, and that's what we're doing here, we're not writing for this church, we're writing for a time immemorial. And for us to hold for you, won't we have to hold that if it's a church, they don't have to follow zoning laws. If they believe a zoning law is wrong, even though we're instructed by Perlstein and a legion of cases from our Supreme Court saying that people must follow the law until they get permission from a court to do otherwise, but in churches they don't have to do this. If they can move anywhere they wish on the basis of their argument that the zoning law doesn't apply to churches because it violates their RLUIPA or First Amendment rights, and then a vested rights doctrine would apply to every church. Well, I think you're overstating the point here. If a person is of Asian extraction and they go to buy a house, and they read the zoning code, and it says only African Americans and Caucasians can live in this residential area, Asians are barred, they can go ahead and ignore that law at their peril. Well, no, because there's U.S. Supreme Court cases on point saying they can't do that. That nobody, in your chain of title, if you said it's limited to people of Caucasian origin, those are all void as of whenever it was, 1962 or whenever it was. Exactly. And then they go to an attorney, they get advice, they say you not only can buy the house, but if the city changes the law and says it's now a manufacturing district, whites can't live there, blacks can't live there, Asians can't live there, you still have a vested right because it's legal at this point for Asians to buy the house, not because the ordinance says so, but because the Illinois law, the Illinois Constitution, the U.S. Constitution, the Supreme Court have all said such laws are void. But the only laws that I suggest in this area that are void, as pointed out in the Seventh Circuit case, civil liberties, are those that don't allow churches at all within a jurisdiction. So not within a zoning area, but a jurisdiction. So if Burbank said we don't like churches, we're an atheist community, kind of the opposite of Zion, I guess, we're going to say no churches are allowed in Burbank, that would indeed, per the Seventh Circuit's decision, violate the R-L-U-I-P-A and the First Amendment. And the courts, they don't do that. Even under amended statute, they allow it anywhere in any residential area, you can build a church. You don't need permission. Well, you're correct about that, Your Honor, but there's a second leg of the law. One is churches must be allowed somewhere, must be permitted use somewhere. But the second is the equal protection argument, where you have non-religious assemblies, business associations, civic associations, professional associations, you must allow religious associations. And that doesn't make the law void, and maybe I misspoke there. What it means is the law is under-inclusive, and it needs to allow religious. It's not the business of zoning to say what goes on inside of this building. Oh, I would think it is. I could run a glue factory in my house, I think. Well, the topics that people are discussing, in a civic association or political association, they're going to have candidates debating. In a religious association, they're going to have Pastor Ruiz preaching. The content of what's going on, whether they're studying books as a civic association or a social group, Knights of Columbus, they have various things they're discussing. But it's too much of an intrusion to allow municipalities to say, this type of political association or assembly, we're not going to allow, but other assemblies, we are. All the uses that were allowed are potentially tax-exempt. Fraternal associations, they're just discussing political issues and different things. And that's what a religious assembly does. And that's why the courts have been saying, can't go that far to... We have some time for reply. Why don't we hear from Burbank. Okay, thank you. Mr. Murphy. May it please the Court. Good morning, Your Honors. Before we get to the merits and vested rights and a couple of questions, Your Honor, Justice Murphy was asking, I'd like to touch base on the standing issue, particularly in light of the fact that this lawsuit was one day old when the motion for preliminary was denied. As this is a case where we've made the argument that somebody who is a mere contract purchaser who has a contract that's contingent on rezoning, where the owner doesn't climb aboard the lawsuit, doesn't have standing at this point. If they close on the property, they do. If the owner joins in the lawsuit, which is typical in zoning litigation, one of two things happens in every zoning case. Either the owner of the property is a nominal plaintiff, and the developer is the one who's really moving the case forward, or the developer closes on the property, assumes the ownership, and then has the property right, which he claims the government is depriving. After all, zoning roots back to a due process question. You're depriving me of the use of my property arbitrarily in violation of substantive due process. So you have to have a property interest. But here, based on these facts, where it's an existing structure, the Old Barn restaurant, world famous, is sitting there, a fellow, again paying taxes. And so they either chose not to ask them to be involved, or maybe Old Barn, the bankruptcy trustee, chose not to get involved in it. You say that for us to agree with you, and again, on this every piece of property, we'd have to hold that any time a contract purchaser, that no contract purchaser, could ever have a right to seek a zoning change in court, because they'd have to go buy the property on the hope that they would get to be able to use a piece of property. Correct? Not necessarily. You're almost correct. All right. Go ahead. Or they could extend. Here's what happens, really. I mean, let me just tell you what happens. The developer and the property owner, whether it's Farmer Brown, or the person who owns the property. A real existing property. So not a developer. A real existing. Yes, Your Honor. I want to buy Old Barn. It was me. I want to buy Old Barn. Right. And I want to turn it into a factory. It looks like I'm going to have a fight with Urbank. Right. If you, Mr. Property Owner, are willing to hang in there for the two years that it's going to take me to litigate this case, I need you to join in the lawsuit. But why would they do that? So the end result, it would be, so my scenario would be incorrect in that a property owner, a seller, could say, we'll have an agreement with you. I'll sit by it for two years, leaving my property fellow. I can do nothing with the property for the next two years while we drag this out through the notoriously slow course system. Nobody in their right mind would do that. Am I mistaken in that? Well, it depends on the nature of the property, the owner's other opportunities, the state of the economy. It may be perfectly logical in this horrible economy that we're in that the property owner, let's forget about the trustee and bankruptcy, because I'm a local government guy. I know zero about the nuances of bankruptcy. But just to play with your hypothetical, I'm the owner of the barn. Sales tax went way down. Well, you know the barn from your fifth municipal days. Right. Hallowed. Sixth. Excuse me. Close enough. From Batchelor Bridgefield, hallowed funeral. I think it would be. She found her in school. Yes. Wonderful. That I don't have a better prospect to sell this property, so I will hang in there with the church, see if they win their case. I'm willing to take that market risk. But from our side, why would we order or write a case that would require that? I don't read the cases that you cite for the proposition holding that they have to be, the owner has to be involved in every one of these cases. It certainly makes sense that if I'm just a contract purchaser, I shouldn't be able to change the seller's zoning of his property because my contract may fall through and he's stuck with my zoning change. But I don't think it can be. I'm extremely disinclined to say no, that in all cases the owner must be involved. The cases that hold that the owner does not have to be involved are in the nature of mandamus. Where I wanted to start this, Your Honor, was the church had made the argument that when it's a special use, there's a distinction rather than a rezoning. That is not accurate. Yes, Your Honor. As I understand what you're saying is that mere contract purchasers on their own have no standing. However, if it's zoned R, if it's zoned R1, it's a permitted use, and then the city comes in after I've expended substantial amounts, then the city comes in and changes it to an RX, I still have standing. Yes, because that's in the nature then of a mandamus where, and this kind of bleeds into this vested rights business which we'll talk about. What the cases say, there's a case called Solomon v. Evanston which holds that if I'm a contract purchaser and the zoning allows it, all I need to get is a building permit, and the city horses me around and then flips the zoning, then I've got a vested right in the existing zoning to fulfill my contract. On the other hand, when an individual has a contract to purchase properties and it's subject to rezoning like this one is, the cases, it seems to me, say, the only right that purchaser has is to buy that property. He doesn't have enforceable land use rights. Why? Because he's not the land user. He doesn't own the property. And when the church attempted to make the distinction with respect to the special use versus rezoning, they made that in their reply brief, at least one of the cases that I cited, Your Honor, is a special use case, and that's the Hasdra homes versus County of DuPage. What is your position as to which ordinance applies? Clearly, the new ordinance applies in this case. And let me kind of, I think I've made my point on standing. You'll make a decision. We start at the opening bid that as a co-equal branch of government to this government, the City Council of Burbank has generally the unfettered right to change its ordinances, no different than the General Assembly, and that with the exception of the vested rights business, the court has to take the case in light of the legislation as it exists on the day of a decision. Vested rights doctrine, Your Honor, is a very narrow exception, and we always have to say vested right in what? And I think that's where the church's argument falls off this track. Going back to that Skokie case, and it's really that cause that COS versus Evanston case that really starts this doctrine. If a property owner expends money in reliance on the probability of a building permit being issued, and that expenditure is substantial and the reliance is reasonable, then he has a vested right. But vested right in what? Vested right in the existing zoning. And in order to have that probability of issuance of a permit, the use that you are seeking as a property owner has to be permitted in that district. Not a discretionary special use. Not a proposed amendment to the ordinance. Not a slam-dunk zoning case. Because if plaintiff's theory were correct, that I've got a slam-dunk special use case, LaSalle National Bank versus County of Crook, and all of the zoning cases would not exist in terms of the eight or nine point balancing test that we get, or your honors see, at least back in the days when there was development in reviewing zoning cases. In this case, in order for the church to have a vested right to build a church, churches must have been a permitted land use in the particular zoning classification that was laid over this property. This property had a C commercial zoning district classification. Churches are not permitted uses in a C classification. That, in our view, certainly, your honors, at this stage, in terms of likelihood of success on the merits where this court, in the absence of a full record in the city's judgment, needs to be even more guided and more bound by past precedent when there's really no flesh on the bones to say, well, the Burbank case is distinguishable from Elgin for this reason, that reason, and the other reason. We're two steps out of the starting gate. So I think in terms of this court's determination of likelihood of success on the merits, the precedent that's staring the church in the face is even more compelling here, and the court needs to rely on it even more in saying that, at this point, there is no likelihood of success on the merits. You would argue that as well, even if we were to rely on the previous ordinance, would you not, that even if they were right, that the previously unamended ordinance applied, they still couldn't argue, or should not be able to prevail on their argument, that there was a probability that they would get a special use, that the vested rights doctrine should not apply in cases involving special uses, because you just can't prove up their probability. That's correct, and we cited a few. There's a second district appellate court case up in Lake County where they specifically say that probability means it needs to be a permitted use. That's what makes a property owner's reliance reasonable, because really this vested rights thing, it's a reliance doctrine, as far as I can tell, that it's reasonable for me to rely on Burbank zoning if it's a permitted use for me to build a three-flat. So I've got the architectural plans, I'm going, I'm building the three-flat, everything's done, I start to dig the hole, and all of a sudden the city says, you know what, we want that single family. Well, whoa, wait a minute, I've got reasonable reliance here, because your law at Burbank tells me that I can do it and I can rely on that. So I guess, Justice Quinn, that's a long way to answer your question, to say that the vested rights doctrine, had the ordinance been unamended, would still apply in this case because it has to be a permitted use to get that probability of issue. It's not probability of rezoning. It's not probability of special use permit. It's probability of issuance of construction permit. So I think that under either the old ordinance or the new ordinance, the vested rights theory fails. The counsel mentioned his experience in this case. I found myself as a Village of Hazelcrest attorney handling the River of Life case. So I was responsible for amending that ordinance in Hazelcrest to eliminate the non-religious assemblies. If I can just talk about that for a second, what's kind of the logic where the Seventh Circuit went on that and where really this court in the Elgin case, you know, really it's the same. You're talking about the Rivers case as opposed to the Petra case, is that correct? Well, actually, Petra is what gave me the idea to do that in River of Life because he said it's kosher to do that. It's a strange word to use in a Christian assembly case. These cases are essentially equal protection cases where the church says, wait a minute, you allow the Democratic Club of Bremen Township, the Boys Club, the Lions Club, those are all assemblies because people get there to talk politics or talk war experiences or get drunk or do whatever, and you can't distinguish a church because we do exactly the same thing except the subject matter is different. That's what makes zoning ordinances vulnerable. The fact of the matter is a lot of times these zoning ordinances are 50 years old, 75 years old, back right after World War II where there was a VFW hall, an American Legion hall. Local government now, and it's not just Burbank and Hazel Crest everywhere, you know, we're in free fall for economics. I mean, every time we turn around a business is closing down, and preservation of the commercial tax base is a legitimate goal, and the Seventh Circuit in the River of Life, the en banc, specifically holds that preservation of, in Hazel Crest it was a TIF district, but the same thing. We were trying to hang on to that area around the metro station at 170th Street to try to pump some life into the village's economy. It's a legitimate thing, and by saying that secular assemblies are in the same position as religious assemblies, meaning none of you can go there, we only want tax paying, sales tax generating, property tax generating businesses there, is a totally legitimate thing for a local government to do, and it doesn't discriminate against the church. The fact that the church had a contract to buy this property and they thought they had a winning lawsuit, I mean, that's really what the church is saying here. We took a look at the zoning ordinance. We have to go through special use, but we've got a flaw that we think we can win the case on. And that may or may not have been true, but the landscape has changed because the municipality has changed the ordinance. I'd like to talk a little bit about the argument opposing counsel made regarding human beings and, you know, if an Asian tried to buy a house. If you wish. Go ahead. Zoning property on the basis of human beings is never acceptable on religion, color of skin, or anything. That's land users. But segregating land uses is the essence of zoning. No factories in a residential district. No homes in a commercial district. No tax exempt entities on one of the few pieces of commercial property left in the municipality. That is not discrimination on the basis of land users. That is the essential function of municipal zoning. And it may be, Your Honors, that we'll be back here in two or three years if the church decides to close on the property or make an arrangement, we litigate the case, and a decision will be made as to whether the plaintiff has overcome the presumption of validity of the municipal zoning decision. And a trial court holds that notwithstanding what the city did, a church is a completely appropriate land use here regardless of the commercial concerns, the tax concerns, or the normal zoning stuff of traffic, that sort of thing. Maybe they'll win their case, but that's after a trial. On the basis of what we have here in light of the precedent that is staring the church in the face, and as I mentioned in the complete absence of any record at all for that purpose, this court should not grant a preliminary injunction, not to mention the fact that really what plaintiff is asking for is mandatory injunctive relief. The plaintiff is asking this court to, in particular since the new zoning ordinance is there, is to say, notwithstanding that law at Burbank, this church goes here today, not after a trial, but today we are in effect mandating that the local government place a particular land use here. That's a mandatory injunction. I think any way you cut it, and the cases say that... But in doing that, it's still a preliminary injunction. We're sending it down for a hearing for a permanent injunction by the trial court. We have all the record and all that. There are very good reasons not to do that. There are some nice reasons to do that. That's what we're here for. But it's not forever anyway. It's a preliminary injunction. But I don't mean by saying that that anybody should worry that we're going to toss this off. We've treated this as important as we can. I appreciate that, but I'm just making the point that in this context, a preliminary injunction is to allow a land use to be built in an area that violates the municipal zoning ordinance in the absence of any record. I think that would be an inappropriate overreach on the part of an appellate court in the context of the precedent that we have here. Thank you. Thank you. Briefly, Mr. Mouk, I have a question for you as soon as you're ready. Considering what Mr. Murphy just pointed out, let's just suppose that we grant you your preliminary injunction today. And you go ahead, as we'll tell them, they're to allow your church to go ahead and be heard, have their assemblies in the old barn, until such time as a full hearing is held for a permanent injunction. And let's say it goes really fast. And so in about six months from now, you lose your permanent injunction, and you're told, get out of the old barn. You'll be selling it on the market then. Would that be correct? Most likely, yes. Because, again, your time is running out, is it not? You have some 34 days or so, by my count, before you have to buy it or not buy it. A preliminary injunction would probably give us the confidence to go ahead and close. As I said, we're vulnerable. We have a lender. Anybody who is buying property is vulnerable to this type of hostile attack by a community. Their lender could back out. The seller could back out. The congregation could have second thoughts. My point is there are worse things than backing out. There are markedly worse things than backing out. They're letting the buyers proceed, owning the property, and then telling them to get out or to stop doing their business, which in this case is a church. Well, it's not the end of the world. You have to resell it. And this property has been vacant for two years, so there's clearly no commercial demand for it in the last two years. And what demand there will be in the future will depend on the zoning. And so the church can put the property on the market and take that risk. They do have to take some risks, but we just don't want them to take inordinate risks and have to be subject to this type of hostility. I don't see the hostility. Go ahead. I'm sorry. If you went back in the court, I take it you would be able to prove what you allege on page 15, that this is hostility towards Hispanics. Thank you for correcting me on that. We believe there's hostility, but we can't prove it. Proving hostility in a racial, ethnic situation these days, everybody's smart enough to say, no, it's about real estate taxes or whatever. The Constitution. Could you say if the Catholic Church were applying or Lutheran Church were applying, that you feel that they would be able to get the zoning change? Quite possibly. But what I want to point out is that the Constitution and these federal civil laws and the Illinois civil rights laws are impact laws. They are laws that say if there is a racial impact, if there's an ethnic impact, because the legislature recognizes and the Constitution recognizes, people aren't going to just say, well, gee, we don't want Hispanics and we're telling you get out of town. They'll make up something. And, in fact, the truth is there are all kinds of different motivations, and we can't prove what's in the heart of each person. But the law doesn't require that. The law protects against effect. When we quote the Illinois Civil Rights Act, it's the effect that the courts need to look at. The mayor may hate us, but the aldermen may love us, but they all voted against us. Because of the nature of this case, earlier I'm aware that the parties we see up along had asked this court to accelerate this appeal, and that was denied by a different division. This case arrived in this division's call last Tuesday, and we set it for orals today some eight days later. Because of the nature of the case, we're going to take a brief recess now and come out and issue a written order ruling on either we have it written both ways, affirming the denial and reversing the denial. We're going to talk about that now and decide that issue and then come out with a written order on that. So either side can appeal or make their other financial decisions, which are, again, of a timing nature, very important to be made immediately in our impression. And then a written, more detailed opinion will follow shortly. So if you'd hang around, we'll be right out. Thank you. Please rise. This court is back in session. Please be seated. The order in Christian Assembly Rios de Agua Viva v. City of Burbank reads as follows. This matter coming before the court on Plaintiff Appellant's appeal of the Circuit Court's denial of Plaintiff Appellant's motion for preliminary injunction, having considered the Plaintiff Appellant's and Defendant Appellant's briefs and arguments, the denial of the motion for preliminary injunction is affirmed. A detailed written opinion will be issued forthwith. I have one copy for each of the parties and one for the court record. And, again, I just suggest to you to look at the date when the next $15,000 is due if you wish to proceed. Those dates are important. And thank you. This court will be adjourned.